**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **LORI ANN PARKER,**<br><br>                    **Plaintiff,**<br><br>**v.**<br><br>**ESTATE OF KATHRYN PARKER BLAIR and its EXECUTOR HARRY E. PARKER aka "HARRY PARK, Jr.",**<br><br>                    **Defendants.** | Civ. No. 19-21093 (KM) (SCM)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

This matter arises out of a will contest in Bergen County Superior Court. The deceased, Kathryn Parker Blair, was the aunt of Lori Ann Parker, plaintiff here.[1] Plaintiff was a beneficiary under Ms. Blair's original will, which was executed in 1987 (the "1987 Will"). Ms. Blair executed a new will in 2012, however, two days before she died (the "2012 Will"). The 2012 will removed plaintiff as a beneficiary. The 2012 Will went to probate and, despite plaintiff's challenges, was upheld as effective.

Plaintiff then, in an effort to overturn the results of probate, launched a raft of litigation over the next several years in both state and federal court, leading judges to dub her a "recreational litigant" and her filings "frivolous," "meritless," and "vexatious." Plaintiff has now filed this action, which essentially reasserts or rephrases various allegations she has previously brought against the defendant, Ms. Blair's estate, and the estate's executor, defendant Harry E. Parker.

---

[1]      Because many of the persons involved share surnames, I will refer to Lori Ann Parker as "plaintiff" throughout this opinion.

1

Now before the Court is defendant's motion to dismiss (DE 4). For the reasons set forth below, the motion is GRANTED.

## I.   Background[2]

In 1987, plaintiff's aunt, Kathryn Parker Blair, executed the 1987 Will, which stated that her estate would pass to her siblings, and if her siblings predeceased her, to their offspring. (DE 4-2 at 145 (Da140 (transcript of proceeding before Judge Jerejian).) Plaintiff's father—Ms. Blair's brother— passed away in 2002, so plaintiff would have taken under the 1987 Will. (*Id.*) Ms. Blair executed a the 2012 will two days before her death, however, and the 2012 removed plaintiff as a beneficiary. (Compl. ¶ 3.)

Plaintiff contested the 2012 Will in Bergen County Chancery Court, alleging that her Aunt was subject to undue influence and lacked testamentary capacity. (*Id.* ¶ 7; MTD at 2; DE 4-2 at 35 (Da32).) Defendants prevailed on summary judgment. (MTD at 2.)

After losing the will contest, plaintiff filed numerous post-judgment motions and appeals, all of which were denied; in most cases they were adjudged meritless or so lacking in merit as to not warrant a formal opinion. (*Id.*) Along the way, New Jersey courts have barred plaintiff from submitting further filings (DE 4-2 at 5), issued sanctions orders against plaintiff for frivolous submissions (*id.* at 49), and noted that plaintiff's filings are "yet another act of recreational litigation in which Plaintiff attempts to resuscitate this matter through vexatious and meritless motion practice" (*id.* at 187).

---

[2]    For ease of reference, certain key items from the record will be abbreviated as follows:

| | | |
|---|---|---|
| DE _ | = | Docket entry in this case |
| Compl. | = | Complaint (DE 1) |
| MTD | = | Defendants' Memorandum of Law in Support of their Motion to Dismiss (DE 4-1) |
| Opp. | = | Plaintiff's Opposition to the Motion to Dismiss (DE 6) |
| Reply | = | Defendants' Reply to Plaintiff's Opposition (DE 7) |

On March 25, 2019, plaintiff moved to vacate the judgment in the will contest on the ground that the Estate's attorney altered the 1987 Will by using whiteout to conceal a handwritten codicil added by Ms. Blair. (MTD at 4.) Plaintiff based this allegation on a photograph of Ms. Blair sitting in her hospital bed with a piece of paper lying on the bed in front of her. (*Id.* at 5.) Plaintiff alleged that the piece of paper lying on the bed was the original will, and that the photograph showed that the paper had handwriting on it, which plaintiff asserts must have been a codicil to the original will. (*Id.*)

At a hearing on plaintiff's motion before Judge Jerejian of Bergen County Superior Court, Chancery Division,[3] defendants produced the original 1987 Will and showed it to the court and the plaintiff. (DE 4-2 at 151–51.) The court reviewed the document and concluded that it "has no other writing on it, no other indications of white-outs or any other types of, as you said, concealment." (DE 4-2 at 151.) In a subsequent written opinion, the Judge concluded that plaintiff had failed to provide "any evidence other than poor quality photographs which reveal[] nothing even remotely discernable," and that the original 1987 Will bore "*zero* indication of any 'handwriting' on the document aside from the signatures . . . . [and m]oreover, the original document did not contain a scintilla of any foreign substance on the page, such as 'white out' or a concealing substance." (DE 4-2 at 187 (emphasis added).) The court concluded that plaintiff's assertions had no merit. (*Id.*)

Having lost in state court, plaintiff initiated this action *via* complaint on December 5, 2019. Though plaintiff previously claimed that the document which appears on Ms. Blair's hospital bed was the *original* 1987 Will with a handwritten codicil, she now claims instead that the document is a *copy* of the 1987 Will. (Opp. at 14–15.) She asserts that this distinction takes the case out

---

[3] The hearing also encompassed defendant's motion to prevent plaintiff from filing any more pleadings in state court, which Judge Jerejian denied on the grounds that the Assignment Judge for Bergen County was the only judge authorized to rule on such motions. (DE 4-2 at 189.) Defendants refiled the motion with the Assignment Judge, who granted it on October 22, 2019. (*Id.* at 5.)

of the collateral estoppel and entire controversy doctrines, which defendants invoke as bases to dismiss the complaint.[4] (DE 4.) Plaintiff filed her opposition on May 14, 2020 (DE 6), and defendants filed their reply on May 21, 2020 (DE 7.)

## II.   Legal Standard for Motion to Dismiss[5]

In considering a motion to dismiss a *pro se* complaint, a court must bear in mind that *pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007); *Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972); *see Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004) ("Courts are to construe complaints so as to do substantial justice . . . keeping in mind that *pro se* complaints in particular should be construed liberally." (citations omitted)). This does not, however, absolve a *pro se* plaintiff of the need to adhere to the Federal Rules of Civil Procedure. *See, e.g., Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015) ("a *pro se* complaint . . . must be held to 'less stringent standards than formal pleadings drafted by lawyers;' . . . but we nonetheless review the pleading to ensure that it has 'sufficient factual matter; accepted as true; to state a claim to relief that is plausible on [its] face.'").

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will

---

[4] Defendants also argue that equitable estoppel, as well as the requirements of Federal Rules of Civil Procedure 8 and 9(b), require dismissal. (MTD at 14–16, 17–20). I will not reach these arguments because I find the other bases for dismissal sufficient.

[5] Defendants request that the court convert their motion to dismiss into a motion for summary judgment, but because I find that a motion to dismiss is appropriate in this instance, I will not do so. Were I to do so, I would be required to first "provide notice of [my] intention to convert the motion and allow [plaintiff] an opportunity to submit materials admissible in a summary judgment proceeding or allow a hearing." *Kisby Lees Mech., LLC v. Pinnacle Insulation, Inc.*, 2012 WL 3133681 at *5 (D.N.J. July 31, 2012).

not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief." (citation omitted)). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Twombly*, 550 U.S. at 570; *see also West Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.*

Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011).

For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014). "Complaints filed pro se are construed liberally, but even a pro se complaint must state a plausible claim for relief." *Badger v. City of Phila. Office of Prop. Assessment*, 563 F. App'x 152, 154 (3d Cir. 2014) (citation and internal quotation marks omitted).

### A. Consideration of Judge Jerejian's Decision in the Bergen County Superior Court, Chancery Division for Purposes of Collateral Estoppel and Entire Controversy Affirmative Defenses

While collateral estoppel and the entire controversy doctrine "may provide a 'basis for a Rule 12(b)(6) dismissal,'" they are affirmative defenses, *see* Fed. R. Civ. P. 8(c); *Brody v. Hankin*, 145 Fed. Appx. 768, 771 (3d Cir. 2005). Like all affirmative defenses, they supply a basis for a motion to dismiss only where "the defense 'is apparent on the face of the complaint.'" *Overseas*

5

*Lease Grp. v. Plocher Constr. Co.*, 800 Fed. Appx. 77, 81 n.7 (3d Cir. 2020). A defense is "apparent on the face of the complaint" if "the plaintiff's own allegations show that a defense exists that legally defects the claim for relief," *H.V. Assocs., LLC v. PNC Bank, N.A.*, 2018 WL 1243984 at *5 (D.N.J. Mar. 8, 2018), or where the public records and materials embraced by the complaint demonstrate that dismissal is proper, *Hoffman v. Nordic Naturals, Inc.*, 837 F.3d 272, 280 n.52 (3d Cir. 2016); *see also Overseas*, 800 Fed. Appx. at 81 n.7 (court may also consider "the complaint, exhibits attached to the complaint . . . as well as undisputedly authentic documents if the complainant's claims are based upon these documents").

I find ample justification for consideration of Judge Jerejian's August 2, 2019 opinion. First, plaintiff refers to the August 2, 2019 hearing in her complaint and relies on events which occurred at that hearing for her allegation that the defendants were intentionally concealing a codicil to the will. (Compl. ¶ 9 ("at a hearing on August 2, 2019, it was learned that defendants had been intentionally concealing a codicil to the will")). The transcript of the hearing is thus an "undisputedly authentic document[]" on which "the complainaint's claims are based." *Overseas*, 800 F. App'x at 81 n.7; *Brody*, 145 F. App'x at 772 (court may consider document if it is "mention[ed] in the complaint"); *Collas v. Wells Fargo Bank, N.A.*, 2018 WL 6499706 at *3 (D.N.J. Dec. 11, 2018) (previous state court action properly a part of MTD record where complaint "makes . . . reference to" the action); *see also Iacaponi v. New Amsterdam Casualty Co.*, 379 F.2d 311, 312 (3d Cir. 1967) ("the fact that the fraud upon which this suit is based had been litigated in state court appears on the face of the complaint").

Second, I find that Judge Jerejian's decision is part of the public record, and I may therefore consider it. *Overseas*, 800 Fed. Appx. at 81 n.7 ("In determining whether claims should be dismissed as barred by claim preclusion, a court may take judicial notice of the record of the prior proceeding."); *see also Oneida Motor Freight, Inc. v. United Jersey Bank*, 848

F.2d 414, 416 n.3 (3d Cir. 1988) (district court is "entitled to take judicial notice" of "record of prior bankruptcy proceeding" in "rendering its decision, regardless of the motion employed."); *Gupta v. Wipro Ltd.*, 749 Fed. Appx. 94, 96 (3d Cir. 2018) (same); *Weinberg v. Kaplan, LLC*, 699 Fed. Appx. 118, 120 n.3 (3d Cir. 2017) ("with respect to affirmative defenses . . . we may also look beyond the complaint to public records, including judicial proceedings."); *Hoffman*, 837 F.3d at 280 ("the two pleadings that are before us and were before the District Court . . . as well as the judgment . . . are matters of public record. We therefore find no error in the District Court's decision to look to these records."); *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group, Ltd.*, 181 F.3d 410, 427 (3d Cir. 1999) (courts may "examine [a decision in the public record] to see if it contradicts the complaint's legal conclusions or factual claims"). Such judicial notice is particularly appropriate where, as here, I consider the decision not as independent evidence of the relevant events, but only for the purpose of ascertaining the scope what it decided.[6] I will therefore consider Judge Jerejian's findings in evaluating defendant's arguments.

## III.   Application of Collateral Estoppel and the Entire Controversy Doctrine

I find that the doctrines of collateral estoppel and entire controversy bar plaintiff's claims. In his August 2, 2019 opinion, Judge Jerejian ruled that defendants had not concealed any codicil to the 1987 Will. (DE 4-2 at 187.) That ruling is binding upon me and requires that I find in defendant's favor on that issue as well. Additionally, in those state court proceedings before Judge Jerejian, plaintiff exhausted her one opportunity to pursue claims arising out of the "transaction or series of transactions" encompassing the will contest and defendant's alleged concealment of a codicil to the 1987 Will. The entire

---

[6] I recognize that some courts have limited the use of prior judicial decisions via public record to solely "the existence of the opinion," not "the truth of the facts recited therein." *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp., Ltd.*, 181 F.3d 410, 426–27 (3d Cir. 1999); *see also Brody*, 145 Fed. Appx. at 772. I do not regard that limitation as prohibiting me from inspecting to those opinions in order to identify what they decided and what collateral estoppel effect they may have had.

controversy doctrine therefore bars her from pursuing them in this subsequent proceeding.

### a. Collateral Estoppel

The doctrine of collateral estoppel, also known as "issue preclusion," "derives from the simple principle that later courts should honor the first actual decision of a matter that has been actually litigated." *Burlington Northern Railroad Co. v. Hyundai Merchant Marine Co., Ltd.*, 63 F.3d 1227, 1231–32 (3d Cir. 1995). Thus, "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Id.* Federal courts give the same preclusive effect to a state-court judgment as would another court of that state. *Peduto v. North Wildwood*, 878 F.2d 725, 728 (3d Cir. 1989).

Because defendants seek to apply collateral estoppel with respect to a New Jersey state court decision, "this Court applies New Jersey's law." *Nahas v. Shore Med. Ctr.*, 2016 WL 1029362 at *7 (D.N.J. Mar. 14, 2016). Under New Jersey law, the party asserting collateral estoppel to foreclose the relitigation of an issue must establish the existence of five conditions. *Id.* at *22–23 (citing *Anela v. City of Wildwood*, 790 F.2d 1063, 1068 (3d Cir. 1987)). Those five conditions are:

> (1) The issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.

*Olivieri v. Y.M.F. Carpet, Inc.*, 897 A.2d 1003, 1009 (N.J. 2006). The doctrine is "rooted in equity and as such will be applied with a view towards obtaining a fair result for all parties." *Nahas*, 2016 WL 1029362 at *8 (citing *Olivieri*, 897 A.2d at 1009).

I find all five conditions are met here. The parties in this case are identical to those who appeared before Judge Jerejian. (*See* DE 4-2 141). Judge Jerejian issued a final decision denying plaintiff's motion to vacate, and contrary to plaintiff's assertions, his decision is no less final merely because plaintiff is currently appealing it. *Bondi v. Citigroup, Inc.*, 423 N.J. Super. 377, 426 (App. Div. 2011) (under New Jersey collateral estoppel doctrine, "a judgment is final even pending an appeal").

Judge Jerejian's decision also decided issues identical to those presented here. New Jersey follows the Restatement (Second) of Judgments. *Delaware Valley Transplant Program v. Coye*, 722 F. Supp. 1188, 1197 (D.N.J. 1989). Under the approach outlined in the Restatement (Second), there are three categories of "issue": issues of evidentiary fact, ultimate fact (i.e., the application of law to fact), and of law. Restatement (Second) of Judgments § 27, cmt c. A decision on any type of "issue" acts as collateral estoppel against later attempts to relitigate it. *Id.*

Judge Jerejian decided two issues of evidentiary fact which are relevant here: (1) that the picture which plaintiff now asserts shows a copy of the 1987 Will with a handwritten codicil actually shows "nothing even remotely discernable"; and (2) that the original will contained no signs that any portion of it had been concealed with whiteout whatsoever. (DE 4-2 at 187.) Judge Jerejian also decided an issue of ultimate fact: namely that defendants did not conceal a codicil to the 1987 Will and thus did not commit a fraud on the court in the will contest. (*Id.*) Judge Jerejian's findings on these issues estop plaintiff from relitigating them and doom her claim.

Specifically, even though plaintiff argues that this case presents a different issue from the previous litigation because she now asserts that the document depicted in the picture is a copy, rather than the original version, of the 1987 Will, (Opp. at 14–15), Judge Jerejian's finding that the picture in fact demonstrates "nothing even remotely discernable" estops plaintiff from disputing this issue of evidentiary fact, (DE 4-2 at 187). Even if Judge Jerejian

had not found that specific fact, his finding of ultimate fact that the defendants had not committed a fraud on the court would preclude plaintiff's fraud claim here. A party may not raise "new evidentiary facts" in a later hearing in order "to obtain a different determination of [an] ultimate fact." Restatement (Second) of Judgments § 27 cmt c. Judge Jerejian's prior holdings preclude plaintiff's assertions on these issues before me.

Judge Jerejian's conclusions were also essential to the previous judgment and were actually litigated in the state case. Judge Jerejian came to his conclusion that defendants had not concealed a codicil both because plaintiff's photograph showed nothing discernible and because there was no evidence of whiteout on the original will, and both of those findings must be given collateral estoppel effect. *See Russell v. Board of Adjustments of Tenafly*, 31 N.J. 58, 68 (N.J. 1959) (where "a court will have two independent reasons for the result it reaches in a case, each one sufficient by itself to sustain the judgment . . . . each becomes a basis for collateral estoppel."). In any event, as mentioned previously, Judge Jerejian also made the finding of ultimate fact that the defendants did not conceal a codicil to the will, a conclusion that binds these litigants and defeats plaintiff's causes of action.[7]

The effect of estoppel of these issues is that plaintiff's complaint cannot be sustained. Plaintiff asserts that defendants committed fraudulent concealment of evidence by concealing a codicil (Compl. ¶ 15), but she is precluded from litigating that issue in a manner contrary to Judge Jerejian's findings. Without that alleged fact, her claim cannot be sustained. Her claim of punitive damages is similarly predicated on the issue of concealment of a

---

[7] I also find that the issues were "actually litigated" given the fact that they formed the basis for the Judge's decision and received extensive consideration throughout the transcript and opinion. (DE 4-2 141–64, 184–89.)

codicil (*id.* ¶ 19),[8] as is her claim seeking discovery sanctions (*id.* ¶ 21).[9] They fall as well.

I therefore hold that plaintiff's complaint must be dismissed because she is estopped from litigating the issues which form the basis for her causes of action.

### b.  The Entire Controversy Doctrine

*A fortiori,* plaintiff's claims here are precluded by New Jersey's Entire Controversy Doctrine, which bars not only matters actually litigated, but those that could have been litigated, in the prior proceeding.

The Entire Controversy Doctrine mandates that "all parties involved in a litigation should at the very least present in that proceeding all of their claims and defenses that are related to the underlying controversy." *Ditrolio v. Antiles*, 142 N.J. 253, 267 (N.J. 1995). New Jersey Court Rule 4:30A lends the doctrine preclusive effect:

> Non-joinder of all claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine.

As it applies here, the doctrine required that plaintiff bring in the prior state court proceeding *all* claims relating to the will contest and defendant's alleged concealment of evidence. That is so because the "central consideration" of the doctrine is "whether the claims against the different parties arise from related facts or the same transaction or series of transactions . . . . [it is the] core set of facts that provides the link between distinct claims against the same or different parties and triggers the requirement that they be determined in one

---

[8] And, of course, punitive damages is not an independent cause of action and thus rises and falls with the fraudulent concealment claim. *See Hassoun v. Cimmino*, 126 F. Supp. 2d 353, 372 (D.N.J. 2000).

[9] I also lack jurisdiction to impose sanctions for violations of another court's discovery orders, especially where that court is a New Jersey state court, so this claim could not have survived regardless of the effect of collateral estoppel.

proceeding." *Id.* at 267–68. The test for whether a claim must be brought in a single action is:

> if parties or persons will, after final judgment [in an action] is entered, be likely to have to engage in additional litigation to conclusively dispose of their respective bundles of rights and liabilities that derive from a single transaction or related series of transactions, the omitted components of the dispute or controversy must be regarded as constituting an element of one mandatory unit of litigation.

*Id.* at 268 (citing *O'Shea v. Amoco Oil Co.*, 886 F.2d 584, 590–91 (3d Cir. 1989)).

The doctrine has a very broad scope. There need not be any "commonality of legal issues" for a claim to be ruled out by the entire controversy doctrine. *Wadeer v. N.J. Mfrs. Ins. Co.*, 220 N.J. 591, 605 (N.J. 2015). The effect of the doctrine is that if a party fails to join a claim that derives from a transaction on which they have already sued, then that party will be "forever barred from bringing a subsequent action involving the same underlying facts." *Rycoline Prods. v. C&W Unlimited*, 109 F.3d 883, 885 (3d Cir. 1997) (citing *Circle Chevrolet Co. v. Giordano, Halleran & Ciesla*, 662 A.2d 509, 513 (N.J. 1995)).

The litigation before Judge Jerejian involved the question of whether Ms. Blair had written a codicil to the 1987 Will, and whether the defendants had hidden that codicil. Plaintiff's allegations in her new complaint involve the exact same subject matter, and thus the same "transaction or series of transactions." *Ditrolio*, 142 N.J. at 267–68. Thus, to the extent that plaintiff seeks to accuse the defendants of tampering with the 1987 Will, she was required to do so *via* appropriate pleadings in the state court action, not here.

Still, a court "should not preclude a claim under the entire controversy doctrine if such a remedy would be unfair in the totality of the circumstances." *Dimitrakopolous v. Borrus, Goldin, Foley Vignuolo, Hyman and Stahl*, 237 N.J. 91, 119 (N.J. 2019). Plaintiff claims that she could not have brought her claims in the state court litigation because she did not learn of the possibility that the

12

document depicted in the photograph was a copy of the 1987 Will until the defendants produced the original. That argument is unavailing for four reasons. First, plaintiff herself admits that she suspected that the document portrayed in the photograph was a copy of the 1987 Will. (Opp. at 16.) It was incumbent upon her to pursue that theory at the state court, and she cannot now raise that issue simply because she neglected to do so before Judge Jerejian. Second, as Judge Jerejian explained below and I confirm now upon my own review, there is simply no indication in plaintiff's photograph that the document in question is related to the 1987 Will in any way. (DE 7-9.) The photograph merely depicts a blurry image of a piece of paper that bears no indication that it is related to the will. Plaintiff thus has not learned any new facts at all; she is just trying out a new theory. Third, by plaintiff's own account, the production of the original will took place in the course of a hearing in the state court litigation, not afterwards; she had plenty of time to adjust her theory in connection with the hearing, or seek a continuance, or bring a motion for reconsideration, or appeal (which she apparently has done). Fourth, even if plaintiff did discover new evidence which she believes is relevant to the state action, she is obligated to present that evidence via the proper procedures in state court, not before me now. *See Boswell v. Wilson, Elser, Moskowitz, Edelman & Dicker, LLP*, 2016 WL 4395717 at *9 (App. Div. Aug. 18, 2016) (plaintiff must redress claims of wrongfully withheld evidence in prior litigation, "not in a separate action"). Plaintiff has had ample opportunity to pursue her claims, and there is no reason of fairness requiring that the court withhold application of the Entire Controversy Doctrine.

The Entire Controversy Doctrine, like the collateral estoppel doctrine, bars these claims.

### c.  Other Issues

Plaintiff raises a number of other meritless arguments. Specifically, she claims that defendant's attorney and his secretary have family relationships with one of the will's witnesses and with a retired court clerk in Bergen County.

Plaintiff offers no explanation as to why this is legally relevant (or if it is, why it could not have been asserted in the prior action).

Plaintiff also asserts that defendant's attorney violated two court orders in connection with producing the original 1987 Will. Defendants deny that they violated any court orders. As previously stated, there is no federal cause of action for violating state court discovery orders, and I do not have jurisdiction to impose sanctions for New Jersey state court discovery violations. If plaintiff believes defendant committed discovery violations, she must seek sanctions *via* appropriate pleadings in the state court action.

## IV.   Conclusion

For the reasons set forth above, the motion (DE 4) of defendants the Estate of Kathryn Parker Blair and Executor Harry E. Parker to dismiss the Complaint is **GRANTED**. An appropriate order accompanies this opinion.

Dated: November 16, 2020

/s/ Kevin McNulty

_____

**Kevin McNulty**
**United States District Judge**